EDWARD F. BERRY and DOROTHY M. BERRY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Berry v. Commissioner
Docket No. 17819-86
United States Tax Court
T.C. Memo 1990-396; 1990 Tax Ct. Memo LEXIS 413; 60 T.C.M. (CCH) 292; T.C.M. (RIA) 90396; July 30, 1990, Filed *413 Decision will be entered under Rule 155. Edward F. Berry, pro se. Susan T. Becker, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' Federal income taxes in the amounts of $ 10,768.64 for 1978 and $ 10,426.89 for 1979. [1] Respondent also determined additions to tax for fraud, pursuant to section 6653(b), [2] only with respect to Edward F. Berry (petitioner) in the amount of $ 5,384.32 for 1978 and $ 5,213.45 for 1979. Respondent now concedes the deficiency and addition to tax for 1978. In his answer, respondent posits that if the Court decides that petitioner is not liable for the addition to tax for fraud for 1979, then in the alternative, he is liable for the addition to tax for negligence. The issues remaining for decision are: (1) whether out-of-court statements *414 made by one of petitioner's co-conspirators to another are admissible under Rule 801(d)(2)(E), Federal Rules of Evidence; (2) whether respondent's deficiency determination was arbitrary; (3) whether petitioner, a former IRS agent, received a $ 25,000 bribe in 1979 which was not reported in petitioners' joint 1979 income tax return; (4) whether petitioner is liable for an addition to tax for fraud for 1979 or, alternatively, for an addition to tax for negligence; and (5) whether Dorothy M. Berry, petitioner's wife (Mrs. Berry), qualifies for "innocent spouse" relief under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Havertown, Pennsylvania, when they filed their petition. Petitioner was a revenue agent in the Examination Division of respondent's Philadelphia office from 1966 until 1980. In 1978 and 1979, Herbert Orlowitz (Orlowitz) was the President and a shareholder of Standard Pipe and Supply Company (Standard); he also was a shareholder of Capital Pipe and Steel Products, Inc. (Capital). Victor Gottfried *415 (Gottfried) was the accountant for Orlowitz, Standard and Capital. (Gottfried died prior to the trial of this case.) Martin Forman (Forman) was one of petitioner's co-workers. During 1977 and 1978, Forman audited Standard's and Capital's 1975 corporate tax returns, as well as Orlowitz's 1976 personal return. Gottfried represented the taxpayers in connection with these audits. Irwing Suval (Suval) was Forman's supervisor. While the audits were in progress, Gottfried informed Orlowitz that Forman could be bribed for $ 150,000 in order to "reach a favorable result." Orlowitz agreed to the bribe; and $ 150,000 was paid to Forman in 1978. (Part of the bribe went to Forman and part went to Suval.) Petitioner audited the 1976 and 1977 returns of Orlowitz, Standard and another company with which Orlowitz was involved. Sometime during early 1979, Gottfried told Orlowitz that petitioner needed $ 25,000 "to do the same type of audit" that Forman had done. Gottfried asked Orlowitz for the $ 25,000; Orlowitz told Gottfried that he did not have it. Gottfried then obtained the money from Standard (through Jean Steinberg, Standard's bookkeeper); he thereafter informed Orlowitz (by way of a *416 gesture) that "there was a completed deal." (In a tape-recorded conversation between petitioner and Orlowitz, petitioner admitted receiving the $ 25,000 bribe.) On May 15, 1984, petitioner, together with Forman, Suval and Orlowitz were indicted as co-conspirators to defraud the United States by impairing the lawful governmental functions of the Internal Revenue Service. On December 7, 1984, petitioner was convicted; he received a sentence of five years and was fined $ 10,000. Orlowitz pleaded guilty to one count of bribery of a public official and one count of conspiracy. Petitioner and Forman were charged with committing numerous overt acts in furtherance of the conspiracy, none of which involved petitioner's receipt of bribe money. (The elements of conspiracy which the Government was required to prove were: (1) The conspiracy described in the indictment existed at or about the time alleged and that it was willfully formed; (2) The defendant [petitioner herein] willfully became a member of the conspiracy; (3) At least one of the conspirators thereafter knowingly committed one of the overt acts charged in the indictment at or about the time and place alleged, and (4) Such overt act *417 was knowingly done in furtherance of some object or purpose of the conspiracy as charged.
The Government was not required to establish that all the means or methods set forth in the indictment were agreed upon or were actually used or put into operation. Rather, it was only required to establish that the conspiracy was knowingly formed, that one or more of the means or methods described in the indictment were agreed upon to be used in an effort to accomplish some object or purpose of the conspiracy and that two or more persons, including petitioner, were knowingly members of the conspiracy.) Petitioner did not report the $ 25,000 bribe in the 1979 tax return which he filed with his wife. Petitioner and his wife jointly made all financial decisions. Mrs. Berry paid their day-to-day expenses and maintained their joint checking account. She also disbursed the "pocket money" for both of them. Petitioners did not live extravagantly. They neither owned new cars nor took lavish vacations. They did, however, belong to a country club which cost them approximately $ 2,500 a year. In his notice of deficiency, respondent determined that petitioners failed to report a $ 25,000 bribe. Respondent *418 determined that the $ 25,000 was received both in 1978 and in 1979; he now concedes petitioner did not receive the $ 25,000 in 1978. Respondent determined that the underpayment of tax resulting from the nonreporting of the bribe was attributable to fraud (the addition to tax for fraud was asserted only as to petitioner). ULTIMATE FINDINGS OF FACTS 1. Gottfried paid petitioner $ 25,000 in 1979 to compromise the tax liabilities of Orlowitz and companies with which Orlowitz was associated. 2. All of petitioner's underpayment of tax for 1979 was due to fraud with intent to evade tax. OPINION 1. Admissibility of Statements Made by Co-Conspirator
Before addressing the substantive tax issues, we direct our attention to petitioner's objection to the admissibility of certain statements Gottfried made to Orlowitz concerning the payment of the $ 25,000 bribe to petitioner. Petitioner does not object to the fact that such statements were made; rather, he objects to the truth of the matters asserted. Respondent posits that such statements are admissible under the "co-conspirator exception" to the rule against hearsay. Rule 801(d)(2)(E), Federal Rules of Evidence. We agree with respondent. *419 For a statement to fall within the "co-conspirator exception" to the rule against hearsay: (1) there must be independent evidence that the conspiracy existed, i.e., evidence independent of the proffered hearsay itself; (2) the evidence must establish by a clear preponderance that the conspiracy existed and that both the party and the declarant were members of the conspiracy; and (3) the out-of-court statement must have been made during the course of, and in furtherance of, the conspiracy. United States v. Jannotti, 729 F.2d 213, 218 (3d Cir. 1984). All three requirements for admissibility are present here. First, petitioner's conspiracy conviction establishes by independent evidence that the conspiracy existed. Second, the indictment (naming Gottfried, Orlowitz, and petitioner as co-conspirators) sufficiently establishes that the declarant and party against whom the statement is to be admitted were members of the conspiracy. And third, the statements objected to by petitioner are statements relating to the purpose of the conspiracy, i.e., receiving bribes in return for performing fraudulent, inadequate, and incomplete audits of the returns of Orlowitz and his companies. Petitioner *420 argues that he was not charged with a conspiracy to evade his income tax liability, and thus petitioner argues that Gottfried and Orlowitz are not his co-conspirators. We disagree. The "co-conspirator exception" to the rule against hearsay is merely a rule of evidence which may be used in civil or criminal cases. There need be no charge of conspiracy as a crime for statements made in furtherance of some joint purpose by one, working in concert with another, to be admissible against the other. United States v. Trowery, 542 F.2d 623, 626 (3d Cir. 1976).Thus, we find the statements by Gottfried to Orlowitz are admissible. 2. Notice of Deficiency
Petitioner contends that respondent's deficiency determination was arbitrary and unreasonable. Respondent's deficiency determination is generally afforded a presumption of correctness which, as a procedural device, places the burden on the taxpayer to produce evidence to rebut the presumption. See Anastasato v. Commissioner, 794 F.2d 884, 886 (3d Cir. 1986), vacating and remanding T.C. Memo. 1985-101, on remand T.C. Memo. 1986-400, and the cases cited therein. As a general rule, this Court will not look behind the notice of deficiency to *421 examine the evidence respondent used in making his determination, even though the evidence may be based upon hearsay or evidence inadmissible at trial. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Greenberg's Express v. Commissioner, 62 T.C. 324, 327 (1974).An important exception to this general rule lies, and the presumption is rebutted, in cases involving unreported illegal income where the Commissioner does not present some predicate evidence connecting the taxpayer to an income-generating activity. Gerardo v. Commissioner, 552 F.2d 549, 554 (3d Cir. 1977).The Court of Appeals for the Third Circuit, where an appeal of this case lies and whose precedents we follow, [3] previously stated that "given the obvious difficulties in proving the nonreceipt of income, we believe the Commissioner should have to provide evidence linking the taxpayer to the tax-generating activity in cases involving unreported income, whether legal or illegal." Anastasto v. Commissioner, 794 F.2d at 887. Here, we find that respondent has established sufficient predicate evidence linking *422 petitioner to the income-generating activity. Respondent produced statements of one of petitioner's co-conspirators, as well as petitioner's own prior statements, which connect him to the receipt of bribe money. In contrast, petitioner produced no evidence to prove that the notice of deficiency was arbitrary and unreasonable other than his self-serving testimony that he did not receive the bribe money. We regard his testimony to be incredible. Such testimony denying receipt of bribe money does not rectify his past conspiratorial actions or the consequences that flow from them. We are not required and do not accept self-serving testimony, even if uncontroverted, if such testimony is improbable, unreasonable, or questionable. Anastasato v. Commissioner, supra at 888; Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Respondent's determination was not arbitrary; thus, petitioner bears the burden of rebutting the presumption of correctness afforded to respondent's determination. Petitioner challenges the correctness of respondent's determination only with his denial of receiving the bribe money. A general denial of liability is insufficient *423 to meet his burden of persuasion. Anastasato v. Commissioner, supra at 888; Avco Delta Corp. v. United States, 540 F.2d 258 (7th Cir. 1976).(The parties stipulated to petitioner's prior conviction of conspiracy to defraud the Government in return for bribes. Even though petitioner's actual receipt of cash was not a necessary element for the conspiracy conviction, we think it is highly suspect, questionable, improbable, and unlikely that an Internal Revenue Agent would jeopardize his career, much less risk serving time in jail, by performing incomplete and inadequate examinations in an attempt to defraud the Government unless there was at least a prospect for material gain.) Respondent, on the other hand, presented compelling evidence that petitioner received a $ 25,000 bribe in 1979. Orlowitz, a credible witness, testified that his accountant, Gottfried, paid petitioner the $ 25,000 bribe. Additionally, respondent presented prior tape-recorded conversations in which petitioner admitted the receipt of bribe money, which he sought to disclaim at the trial of this case. Petitioner's feeble attempt to explain his prior tape recorded admissions as being "convenient" but untrue convinces *424 us that his testimony is untrustworthy. Suffice it to say, petitioner failed to persuade us that he did not have taxable income from the $ 25,000 he received. Sec. 61(a); sec. 1.61-14, Income Tax Regs.; Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).We sustain respondent's determination that in 1979 petitioner received unreported bribe income in the amount of $ 25,000 in 1979. 3. Fraud -- Section 6653(b) Addition to Tax
Next, we must decide whether petitioner is liable for the addition to tax for fraud pursuant to section 6653(b). Respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a); Stone v. Commissioner, 56 T.C. 213, 220 (1971); Rule 142(b). This burden may be met by showing that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of taxes known to be owing, and that there is an underpayment of tax. Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1113 (1983).However, respondent cannot satisfy his burden by relying solely on the failure of the taxpayers to discharge their burden of proving *425 error in the determination of the deficiency. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). For purposes of section 6653(b), fraud is the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing. Kotmair v. Commissioner, 86 T.C. 1253, 1259 (1986). It is unnecessary for respondent to prove the exact amount of income that was fraudulently unreported because section 6653(b), as applicable to the year in issue, applies to the entire deficiency if any portion of the underpayment for the year is attributable to fraud. Professional Services v. Commissioner, 79 T.C. 888, 890 (1982); Otsuki v. Commissioner, supra at 105. The existence of fraud is a question of fact to be resolved upon a consideration of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).Fraud is never presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970).Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely *426 available. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Gajewski v. Commissioner, supra at 200.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Spies v. United States, 317 U.S. 492 (1943); Gajewski v. Commissioner, supra at 200; Stone v. Commissioner, supra at 223-224. Courts have relied on a number of indicia of fraud in deciding section 6653(b) cases. In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. a Memorandum Opinion of this Court, the Court of Appeals for the Ninth Circuit set forth a nonexclusive list of various kinds of circumstantial evidence which may give rise to a finding of fraudulent intent. Such indicia of fraud include engaging in an illegal activity. We have no problem in concluding that petitioner's underpayment of tax was due to fraud. He was convicted of conspiracy to defraud the United States by receiving a bribe. He had been a revenue agent for approximately 13 years at the time he received the $ 25,000 bribe. Given his position with the IRS and his familiarity with the tax laws, he was fully aware of his duty to report the bribe income. Petitioner's *427 entire course of conduct reveals that he intended to prevent the collection of tax he knew to be owing on the illegal bribe income. Respondent has proved fraud by clear and convincing evidence and we therefore uphold the addition to tax under section 6653(b). Consequently, we need not consider respondent's alternate assertion as to the section 6653(a) addition to tax for negligence. 4. Innocent Spouse Claim
The final issue is whether Mrs. Berry qualifies for relief from liability for the deficiency as an "innocent spouse" pursuant to sec. 6013(e). [4]
As a general rule, when a husband and wife file a joint return, each is jointly and severally liable for the amount of tax due. Sec. 6013(d)(3); Davenport v. Commissioner, 48 T.C. 921, 926 (1967); *428 Dolan v. Commissioner, 44 T.C. 420, 426-427 (1965).However, section 6013(e)(1) relieves a spouse of liability for a substantial understatement of tax on a joint return if the following conditions are met: [5]
(A) a joint return has been made under section 6013 for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency attributable to such substantial understatement * * * .
Mrs. Berry bears the burden of proving that she has satisfied each statutory requirement of section 6013(e). Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971); Rule 142(a). *429 A failure to meet one of the statutory requirements will prevent Mrs. Berry from qualifying for relief under section 6013(e). Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Shea v. Commissioner, 780 F.2d 561, 565 (6th Cir. 1986); Ratana v. Commissioner, 662 F.2d 220, 224 (4th Cir. 1981). Mrs. Berry has satisfied the first prerequisite to innocent spouse relief, i.e., that she filed a joint return with her husband. Sec. 6013(e)(1)(A). The second prerequisite Mrs. Berry must satisfy is that there was a substantial understatement of tax attributable to a grossly erroneous item of her spouse. Sec. 6013(e)(1)(B). A substantial understatement means any understatement of tax which exceeds $ 500. Sec. 6013(e)(3). A grossly erroneous item includes any item of gross income attributable to the other spouse which is omitted from gross income. Sec. 6013(e)(2)(A). Petitioners understated their 1979 tax liability by $ 10,426.89 as a result of their failure to include in gross income the bribe money received by petitioner. Mrs. Berry has therefore met the second prerequisite under section 6013(e). Mrs. Berry must also prove that she *430 neither knew, nor had reason to know, of the substantial understatement on the 1979 return. The standard applied in determining whether a spouse knew or should have known of a substantial understatement of tax is whether a reasonable person under the taxpayer's circumstances at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted. Stevens v. Commissioner, 872 F.2d at 1505; Purcell v. Commissioner, 86 T.C. at 238; Terzian v. Commissioner, 72 T.C. 1164 (1979); Smith v. Commissioner, 70 T.C. 651 (1978); McCoy v. Commissioner, 57 T.C. 732 (1972).A spouse cannot close his or her eyes to unusual or lavish expenditures, or to other facts, that might give reason to know of unreported income. Terzian v. Commissioner, 72 T.C. at 1170; Mysse v. Commissioner, 57 T.C. 680, 699 (1972). Although Mrs. Berry testified that she did not look at the returns before signing, this fact, if true, is only relevant to her actual knowledge. Section 6013 is designed to protect the innocent, not the intentionally ignorant. Dickey v. Commissioner, T.C. Memo. 1985-478.The "reason to know" standard imposes a "duty of *431 inquiry" on the spouse claiming relief. Stevens v. Commissioner, 872 F.2d at 1505.Even if we were convinced that Mrs. Berry did not have actual knowledge of the circumstances giving rise to the understatement, we would conclude that a reasonable person in her position would have sufficient knowledge of circumstances warranting investigation. Mrs. Berry paid petitioners' day-to- day expenses and maintained their joint checking account. She disbursed money for petitioner and herself from his wages. Petitioners made important financial decisions together. Mrs. Berry has failed to introduce any evidence which would indicate that her husband maintained separate bank accounts. Thus, we can only conclude that she knew their complete financial situation. Although Mrs. Berry testified that she saw no evidence of additional income, we are not bound by her testimony. Geiger v. Commissioner, 440 F.2d at 689-690.We found Mrs. Berry to be an agreeable and cooperative witness, but her memory of events was often vague and unconvincing. She testified that their life-style was "modest" or "average," but these terms are relative. In response to several questions (e.g., the type and number of *432 automobiles owned; when Mr. Berry went to Scotland to play golf; and whether the family went on vacations), Mrs. Berry's testimony was equivocal or lacking in the requisite precision to be convincing. We believe Mrs. Berry knew of the understatement on petitioners' 1979 tax return; accordingly, she has not satisfied the third prerequisite for innocent spouse relief. Her claim for innocent spouse relief pursuant to section 6013(e) is therefore denied. (As an aside, Mrs. Berry failed to persuade us that it would be inequitable to hold her liable for the deficiency.) To reflect the foregoing and the concessions made by respondent, Decision will be entered under Rule 155. Footnotes
1. The cover page of the notice of deficiency shows the amount of the deficiencies to be $ 16,152.96 for 1978 and $ 15,640.34 for 1979. These amounts are in error; the accompanying statement of income tax changes reflects the correct amounts, which are set forth above.↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940↩ (1971).
4. Subsequent to petitioners' 1979 tax year, the Deficit Reduction Act of 1984 ("DEFRA") amended section 6013(e). Sec. 424, DEFRA, 98 Stat. 801. This amendment applied retroactively to all taxable years to which the Internal Revenue Codes of 1954 and 1939 apply, except those closed by statutes of limitation or res judicata. sec. 424(c), DEFRA, 98 Stat. 803. Because petitioners' 1979 tax year has not been closed by either of such means, amended section 6013(e) applies.↩
5. Because the deficiency determined herein solely involves omitted income, comparison of the understatement to preadjustment year adjusted gross income is not warranted. Sec. 6013(e)(4)(E).↩