CAROLYN J. NEWTON, Petitioner v COMMISSIONER OF INTERNAL REVENUE, Respondent
Newton v. Commissioner
Docket No. 10630-88
United States Tax Court
T.C. Memo 1990-606; 1990 Tax Ct. Memo LEXIS 681; 60 T.C.M. (CCH) 1323; T.C.M. (RIA) 90606; December 3, 1990, Filed *681 Decision will be entered for the respondent. Joe D. Black, for the petitioner. Timothy A. Lohrstorfer, for the respondent. CLAPP, Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiency in and additions to the Federal income and self-employment taxes of petitioner and her husband: Additions to tax Year
Deficiency
sec. 6653(a)(1)
sec. 6653(a)(2)
1981
$ 15,056.07
$ 752.80 50 percent of interest
due on deficiency
After concessions by petitioner, the issues are (1) whether petitioner is entitled to innocent spouse relief under section 6013(e); and (2) whether petitioner is liable for additions to tax under sections 6653(a)(1) and *682 (2). All section references are to the Internal Revenue Code for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts are stipulated and are so found. Petitioner resided in Washington, Indiana, when her petition was filed. Petitioner was the wife of Harvey C. Newton (Newton) during 1981 and until his death in 1987. Newton operated License Branch No. 149 for the State Bureau of Motor Vehicles in Washington, Indiana. Newton acted as an agent for the State of Indiana and received the net profits from the operation of the license branch. After checks written on the license branch checking account were not honored due to insufficient funds, the Indiana State Board of Accounts sent auditors to the license branch to perform an on-site audit. A report of the audit revealed that there were shortages of funds. On December 8, 1981, Newton was indicted on 49 counts related to the diversion of funds from the license branch. Newton admitted creating the shortages in a letter dated December 12, 1981, to an official of the Indiana State Board of Accounts. Newton pled guilty to eight theft counts of the indictment *683 on January 28, 1983. Petitioner first learned of her husband's embezzlement in the first week of December 1981. She received a phone call from Sue Ann Armes (Armes), who had operated the license branch for Newton. Armes told petitioner that there was a deficit at the license branch caused by her husband and asked petitioner if she had funds to cover the shortages. Newspaper accounts of the shortages appeared in the local newspaper on December 8 and 16, 1981. Petitioner was devastated by these occurrences. Petitioner and her husband filed a joint Federal income tax return for 1981. None of the embezzled funds were reported on the return. Petitioner signed the return on or about February 20, 1982. Petitioner did not prepare the return and did not know that embezzled funds were taxable. OPINION A taxpayer must satisfy each element of section 6013(e)(1) in order to qualify for relief from liability for a substantial understatement of tax attributable to a grossly erroneous item of his or her spouse that was reported on their joint return. , affg. in part and revg. in part a Memorandum Opinion of this *684 Court; . The parties agree that petitioner has met the first two requirements of section 6013(e)(1). The other two requirements are: (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all of the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax attributable to such substantial understatement * * *. [Sec. 6013(e)(1)(C) and (D).]
Paragraph (C) above requires that the spouse claiming to be relieved of liability is unaware of the circumstances which give rise to the error on the return, and not merely unaware of the tax consequences of these facts. ; , affd. . Respondent asserts that petitioner became aware during 1981 that her husband embezzled funds during 1981, that she knew the factual background in February 1982 when she signed the joint return *685 and, thus, she does not qualify for innocent spouse status. We agree. Petitioner testified that she knew of the embezzlement during the first week of December 1981 when her husband's manager, Armes, telephoned to tell her that there were shortages in the license branch account caused by her husband. Armes asked petitioner if she had money to make up such shortages. By December 8, 1981, information regarding the shortages appeared in the local newspaper. Petitioner testified that she was aware of the newspaper articles. Petitioner's knowledge of her husband's embezzlement is illustrated further by her testimony that she was devastated by the news of such event. Petitioner's argument in essence is that because petitioner did not know of the tax consequences of embezzlement, she had no reason to know of the omission of income. However, this argument goes against the well-established principle that a spouse claiming innocent spouse relief must not know of the underlying facts which give rise to the error. ; .As petitioner had actual knowledge of the underlying *686 facts that created the substantial understatement of tax, she does not qualify for innocent spouse status. We do not need to consider the last element of section 6013(e)(1). The second issue is whether petitioner is liable for additions to tax under sections 6653(a)(1) and (2). Petitioner argues that if she qualifies for innocent spouse status, she is also relieved of liability for any section 6653(a) additions to tax. However, petitioner is not eligible for innocent spouse status, and she has presented no evidence regarding these additions. Therefore, the additions stand. Decision will be entered for the respondent.