T.C. Summary Opinion 2007-29


UNITED STATES TAX COURT


ELSIE R. GARZA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5149-06S.          Filed February 27, 2007.


Elsie R. Garza, pro se.

Chong S. Hong and Daniel W. Layton, for respondent.


COUVILLION, Special Trial Judge:  This case was heard pursuant to section 7463 in effect when the petition was filed.[1] The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $3,525 and $2,842 in petitioner's Federal income taxes for taxable years 2002 and 2003, respectively. Petitioner does not challenge these deficiencies. This case involves petitioner's election to seek relief from joint and several liability for Federal income taxes for 2002 and 2003 under section 6015(b), (c), or (f).[2] Respondent determined that petitioner is not entitled to relief under any of the aforementioned subsections of section 6015. The sole issue for decision is whether petitioner is entitled to relief under section 6015(b), (c), or (f) for taxable years 2002 and 2003.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made part hereof. Petitioner's legal residence at the time the petition was filed was Fresno, California.

---

[2]Prior to filing the petition in this case, petitioner participated in a case in which the Court decided that she and her spouse were liable for deficiencies in taxes for 1999-2001. See Garza v. Commissioner, T.C. Summary Opinion 2005-95. Petitioner meaningfully participated in that proceeding and did not seek relief under sec. 6015 at that time. Accordingly, the Court granted respondent's motion for partial summary judgment in this case since the judicial doctrine of res judicata bars petitioner from requesting sec. 6015 relief for 1999-2001, the years at issue in the prior proceeding. Sec. 6015(g)(2); Huynh v. Commissioner, T.C. Memo. 2006-180 (where a requesting spouse meaningfully participated in a prior proceeding, did not seek sec. 6015 relief at that time, and that proceeding's decision has become final, the requesting spouse is barred from seeking relief for the years at issue in the prior proceeding).

During the years at issue, petitioner was married to Mario O. Garza (Mr. Garza). Petitioner and Mr. Garza have been married for nearly 25 years. They physically separated on March 8, 2001, when they were evicted from their home. Petitioner has resided with her mother since the eviction. Mr. Garza moved in with his father sometime in October or November 2001. Although she lived apart from him, petitioner frequently received mail, including tax information, addressed to Mr. Garza. Accordingly, Mr. Garza went to petitioner's mother's house nearly daily to pick up his mail. Petitioner visited Mr. Garza at least two to three times a week at his father's house. Thus, petitioner and Mr. Garza remained married and maintained contact with each other after their eviction and physical separation.

Petitioner was employed during the years at issue by Aetna Insurance Co. processing medical claims. Though technically retired since 1998, Mr. Garza continued to receive nonemployee compensation from renewed life insurance policies (renewal income) he had sold while he was employed as an independent insurance agent by American Income Life Insurance Co. (AILIC).[3]

---

[3]As an agent for AILIC, Mr. Garza sold insurance policies and earned a commission for each sale. AILIC advanced him anticipated commissions and paid for certain expenses he incurred. These amounts were added to Mr. Garza's outstanding account balances due to AILIC. During the time he worked for AILIC, these advances and expenses amounted to almost $90,000. During the years at issue, all commissions coming to and creditable to Mr. Garza were applied to his outstanding account

(continued...)

On a joint Federal income tax return for 2002, petitioner and Mr. Garza claimed an overpayment of tax in the amount of $449. The return did not include insurance renewal payments in the amount of $14,405 received by Mr. Garza and a $1,688 annuity distribution petitioner received that year. On August 9, 2004, a notice of deficiency was issued to petitioner and Mr. Garza in which respondent determined a deficiency of $3,525 in Federal income tax for 2002 based on the failure to include these items of income on their return. Neither petitioner nor Mr. Garza petitioned this Court in response to the notice of deficiency.

On their joint Federal income tax return for 2003, petitioner and Mr. Garza reported a tax due of $792. The return did not include renewal income in the amount of $10,137.19 that had been received by Mr. Garza. On October 3, 2005, a notice of deficiency was issued to petitioner and Mr. Garza in which respondent determined a deficiency of $2,842 based on the omitted income. Neither petitioner nor Mr. Garza petitioned this Court in response to the notice of deficiency.

The relationship later soured between petitioner and Mr. Garza. After a series of altercations, they legally separated sometime in July 2004. Petitioner obtained a temporary restraining order against Mr. Garza on July 14, 2004, and filed for divorce on August 23, 2004. The Superior Court of

---

[3](...continued)
balances owed to AILIC.

California, County of Fresno, granted petitioner a protective order on April 21, 2005.  Petitioner was still involved in divorce proceedings at the time of trial in this case.

Petitioner filed a Form 8857, Request for Innocent Spouse Relief, on August 24, 2005, claiming that the omitted items of income for 2002 and 2003 were Mr. Garza's income and that he refused to include these items of income on the returns.[4]  On a Form 12507, Innocent Spouse Statement, Mr. Garza claimed that petitioner knew of the omitted items of income for the years at issue.  On February 22, 2006, respondent issued separate Final Notices for 2002 and 2003 to petitioner determining that she was not entitled to relief from joint and several liability under section 6015(b), (c), or (f) because she had actual knowledge and reason to know of the omitted income that gave rise to the deficiencies.

Petitioner alleges in her petition that she is entitled to relief from joint and several liability under section 6015 because Mr. Garza concealed from her the insurance renewal income that gave rise to the tax liabilities.  Pursuant to Rule 325 and King v. Commissioner, 115 T.C. 118 (2000), respondent served Mr. Garza with notice of this proceeding and his right to intervene.

---

[4]In the Stipulation of Settled Issues, petitioner conceded her liability for the tax due on a $1,688 annuity distribution she received in taxable year 2002.

He did not file a notice of intervention and did not appear or participate in the trial of this case.

A taxpayer may petition this Court for review of the Commissioner's determination denying relief under section 6015. Sec. 6015(e)(1)(A). The petition was filed timely in response to the Final Notices that denied petitioner's request for section 6015 relief from her income tax liabilities for the years at issue. Thus, the Court has jurisdiction to review the Commissioner's denial of section 6015 relief for 2002 and 2003.

Generally, married taxpayers may elect to file a Federal income tax return jointly. Sec. 6013(a). Each spouse filing a joint return is jointly and severally liable for the accuracy of the return and the entire tax due. Sec. 6013(d)(3). Under certain circumstances, however, section 6015 provides relief from joint liability. Section 6015 applies to any liability for tax arising after July 22, 1998, and to any liability for tax arising on or before July 22, 1998, remaining unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740.

In general terms, there are three avenues of relief under section 6015: Section 6015(b) provides relief with respect to certain erroneous items on the return, section 6015(c) provides for a separation of liability for separated taxpayers, and section 6015(f) more broadly confers on the Secretary discretion

to grant equitable relief for taxpayers who otherwise do not qualify for relief under either subsection (b) or (c).

A prerequisite for relief under section 6015(b) or (c) is the existence of an "understatement of tax" or a tax deficiency. Sec. 6015(b)(1)(B), (c)(1); Block v. Commissioner, 120 T.C. 62, 65-66 (2003). Except as otherwise provided in section 6015, the requesting spouse bears the burden of proving that each requirement of section 6015(b)(1) has been satisfied. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

Under section 6015(b), the Court may grant a taxpayer full or apportioned relief from joint and several liability for an understatement of tax on a joint return if, among other requirements,[5] the taxpayer establishes that she "did not know, and had no reason to know" that the other spouse understated that spouse's tax liability on the return. Sec. 6015(b)(1)(C), (2).

Where a spouse seeking relief has actual knowledge of the underlying transaction that produced the omitted income, innocent spouse relief is denied. Cheshire v. Commissioner, 115 T.C. 183, 192-193 (2000), affd. 282 F.3d 326 (5th Cir. 2002). The requesting spouse has "reason to know" of the understatement of

---

[5]Neither respondent nor petitioner disputes that, in this case, the requirements of subpars. (A), (B), and (E) of sec. 6015(b)(1) have been satisfied. The dispute is solely as to whether petitioner meets the requirements of subpars. (C) and (D) of sec. 6015(b)(1).

tax if she knew every fact necessary to determine the legal consequences of the income or if such facts are reasonably within her reach; ignorance of the attendant tax consequences is not a defense. Mitchell v. Commissioner, 292 F.3d 800, 804-804 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332; Price v. Commissioner, 887 F.2d 959, 964 (9th Cir. 1989); McCoy v. Commissioner, 57 T.C. 732, 734-735 (1972).

In the instant case, the Court finds that petitioner knew or had reason to know of the understatements of tax at the time the returns for 2002 and 2003 were filed. The Court is satisfied that petitioner was aware that Mr. Garza received renewal income during the years at issue. Petitioner admitted in her testimony that she was aware that Mr. Garza received renewal income in 1999 because she discussed with him the receipt of such income when she received in the mail a Form 1099-MISC, Miscellaneous Income, from AILIC for that year. Additionally, Mr. Garza's receipt of renewal income, as well as the tax consequences arising therefrom, were the subject of an audit examination conducted by agents of respondent sometime in 2002 for taxable years 1999-2001. At trial, when asked whether she participated in the audit examination, petitioner testified: "Yes, that's when I got my education on what was going on." Moreover, petitioner admitted on her Form 12510, Questionnaire for Requesting Spouse, that she questioned Mr. Garza about the renewal income he received during

the years at issue and was told not to worry about it. Petitioner's basis for requesting relief is that, since she was told not to worry about the income reported on the Forms 1099-MISC for 2002 and 2003; i.e., the insurance renewal income, she was not aware and had no reason to know of the understatements of tax for the years at issue.

Even if a spouse requesting relief under section 6015 does not have actual knowledge of the item giving rise to an understatement, that spouse may, nonetheless, have reason to know of the understatement. A requesting spouse has reason to know of an understatement if a "reasonably prudent person with knowledge of the facts possessed by the person claiming * * * [relief] should have been alerted to the possibility of a substantial understatement." Flynn v. Commissioner, 93 T.C. 355, 365 (1989). A spouse requesting relief under section 6015 has a duty of inquiry. Butler v. Commissioner, 114 T.C. 276, 284 (2000).

Respondent argues that petitioner had reason to know that Mr. Garza received renewal income in 2002 and 2003. Notwithstanding her lack of a business background, the Court is not convinced that petitioner's failure to inquire was reasonable. Mr. Garza's unreported renewal income was the only matter discussed during the 2002 audit examination of taxable years 1999-2001. A reasonably prudent taxpayer should have been alerted to the possibility that, despite retiring from AILIC in

1998, Mr. Garza continued to annually receive renewal income when customers renewed life insurance policies he had sold them.  For these reasons, petitioner is not entitled to relief under section 6015(b).

Section 6015(c) affords proportionate relief to the requesting spouse through allocation of the tax items to the responsible party.  Generally, this avenue of relief allows a spouse to elect to be treated as if a separate return had been filed.  Rowe v. Commissioner, T.C. Memo. 2001-325.  To be eligible for relief under section 6015(c), the requesting spouse must no longer be married to, be legally separated from, or have lived at least 12 months apart from the individual with whom the tax return was filed.  Sec. 6015(c)(3)(A)(i).  Relief under section 6015(c) is not available, however, to a taxpayer if it is shown that the taxpayer had actual knowledge when signing the return of any "item" giving rise to the deficiency.  Sec. 6015(c)(3)(C).

As previously discussed, petitioner was in divorce proceedings and was legally separated from Mr. Garza in July 2004.  However, as noted above, petitioner not only had reason to know of the understatements at the time the returns were signed, but she also had actual knowledge of the items giving rise to the deficiencies.  Because petitioner had actual knowledge of the

renewal income, she is precluded from claiming relief under section 6015(c).

Petitioner may be considered for relief under section 6015(f) where there is an unpaid tax or deficiency for which she is not eligible for relief under section 6015(b) or (c). Sec. 6015(f)(2). Section 6015(f)(1) provides that a taxpayer may be relieved from joint and several liability if it is determined, after considering all the facts and circumstances, that it is inequitable to hold the taxpayer liable for the unpaid tax or deficiency.

The Commissioner has prescribed guidelines that are considered in determining whether it is inequitable to hold a requesting spouse liable for all or part of the liability for any unpaid tax or deficiency. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. 297, sets forth seven threshold conditions that the requesting spouse must satisfy before the Commissioner will consider a request for relief under section 6015(f).[6] Respondent agrees that petitioner has satisfied the threshold conditions.

Where, as here, the requesting spouse satisfies the threshold conditions, Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B.

_____

[6]Rev. Proc. 2000-15, 2000-1 C.B. 447, was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296, and is effective as to requests for relief filed on or after Nov. 1, 2003, and also is effective for requests for relief pending on Nov. 1, 2003, as to which no preliminary determination letter had been issued as of that date. Petitioner's application for relief was submitted after Nov. 1, 2003, on Aug. 24, 2005. Accordingly, the guidelines found in Rev. Proc. 2003-61, supra, are applicable in this case.

at 298, lists factors to be evaluated for requests for relief under section 6015 for spouses who filed a joint return and do not qualify for relief under Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.[7]  Rev. Proc. 2003-61, sec. 4.03(2)(a), offers a nonexclusive list of factors to be considered, including:  (1) Marital status; (2) economic hardship; (3) no knowledge or reason to know of the item giving rise to the deficiency; (4) whether the nonrequesting spouse had a legal obligation to pay the liability; (5) whether the requesting spouse benefited significantly from the item giving rise to the deficiency; and (6) whether the requesting spouse has made a good faith attempt to comply with the tax laws in subsequent years.  The Court considers these factors in determining whether equitable relief under section 6015(f) should be provided to petitioner.

The Court reviews the Commissioner's denial of section 6015(f) relief under an abuse of discretion standard.  Butler v. Commissioner, supra at 287-292.  The Court defers to the Commissioner's determination unless it is arbitrary, capricious, or without sound basis in fact.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003).

---

[7]Petitioner seeks relief from the understatements of tax attributable to omitted renewal income from 2002 and 2003. Because Rev. Proc. 2003-61, sec. 4.02, considers circumstances where equitable relief may be granted for underpayments of tax, petitioner does not qualify for relief under sec. 4.02.

Petitioner bears the burden of proving that there was an abuse of discretion. Abelein v. Commissioner, T.C. Memo. 2004-274.

In the case of an income tax liability that arises from a deficiency, as exists in this case, a finding that the requesting spouse had actual knowledge of the item giving rise to the deficiency is an extremely strong factor weighing against relief. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(B). Thus, petitioner must establish that she did not know about Mr. Garza's renewal income during 2002 and 2003.

As discussed earlier, petitioner had actual knowledge of Mr. Garza's renewal income. In the 2002 audit examination, the sole issue was Mr. Garza's receipt of renewal income in taxable years 1999-2001. Petitioner was present during the audit examination and testified that the audit examiner made her aware that Mr. Garza, even though retired, continued to receive renewal income from AILIC. Further, petitioner does not dispute that the Forms 1099-MISC for Mr. Garza's renewal income for the years at issue were sent directly to her at her mother's address. Petitioner testified that Mr. Garza checked the mail at her mother's address while petitioner was working and took the Forms 1099-MISC without her knowledge. On her Form 12510, however, petitioner stated that she inquired many times about the omitted renewal income and was told not to worry about it. The Court finds that petitioner had actual knowledge of the items giving rise to the

deficiencies.[8]  Petitioner's actual knowledge is a strong factor weighing against relief, which can be overcome only if the factors in favor of equitable relief are particularly compelling.

Petitioner contended at trial that she would experience economic hardship if she were forced to pay the tax liabilities for the years at issue.  A taxpayer might experience economic hardship if he or she is unable to pay basic reasonable living expenses.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  It is the taxpayer's burden to show both that the expenses qualify and that they are reasonable.  Monsour v. Commissioner, T.C. Memo. 2004-190.  Despite her assertion that paying the tax liabilities would cause her to experience economic hardship, petitioner provided no evidence at trial that she would be unable to pay basic living expenses if she were held liable for the deficiencies.  As noted earlier, petitioner was and remains gainfully employed.  The Court fails to see, and petitioner has not established, that she would suffer economic hardship if her request for relief were denied.  This factor weighs against granting relief to petitioner.

On the basis of the facts and circumstances in this case, including the factors set forth in Rev. Proc. 2003-61, supra, the

---

[8]Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(c), provides factors to consider in determining whether the requesting spouse had reason to know of the item giving rise to the deficiency. Because the Court is convinced that petitioner had actual knowledge of the omitted items of income, consideration of these factors is superfluous.

Court concludes that there was no abuse of discretion in denying petitioner's request for relief under section 6015(b), (c), or (f) for taxable years 2002 and 2003.  To the extent not addressed herein, other considerations are without merit or unnecessary to address.  The Court, therefore, sustains respondent's determination that petitioner is not entitled to relief from joint liability pursuant to section 6015(b), (c), or (f) for taxable years 2002 or 2003.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent.</u>